# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs December 7, 2010

## STATE OF TENNESSEE v. EDDIE H. PITTMAN

**Direct Appeal from the Circuit Court for Madison County**
**No. 09-152     Roger A. Page, Judge**

**No. W2009-02316-CCA-R3-CD  - Filed March 10, 2011**

The defendant, Eddie H. Pittman, was convicted by a Madison County Circuit Court jury of theft of property valued between $500-$1000, a Class E felony, and was sentenced as a career offender to six years in the Department of Correction.  On appeal, he challenges the sufficiency of the evidence regarding the value of the stolen goods.  After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

J. Colin Morris, Jackson, Tennessee (at trial); and Paul E. Meyers, Assistant Public Defender (on appeal), for the appellant, Eddie H. Pittman.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and James W. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

This case is the result of the defendant's taking merchandise from a Kohl's department store for which he was indicted on one count of theft of property valued over $1000.

At trial, Daniel Brock, loss prevention supervisor for a Kohl's department store in Jackson, Tennessee, testified that on November 21, 2008, he initiated a floor surveillance

of a possible shoplifting case. Thereafter, he went to his office and observed the possible shoplifter on the video surveillance system. In total, Brock observed the defendant for thirty to thirty-five minutes. He watched as the defendant rapidly selected several fragrance items and then proceeded to the men's department where he unpackaged the items and placed them on his body. Along with the items of men's and women's fragrances, the defendant was observed concealing four pairs of black gloves and a watch on his body.

Brock testified that he returned to the store floor and waited to see if the defendant attempted to bypass the cash registers. When the defendant attempted to exit the store without paying, Brock identified himself and verbally requested that the defendant return to the store. The defendant refused to comply, and the two men "ended up struggling first inside and then outside of the store" until members of the Jackson Police Department arrived. Brock recovered "[a] number" of stolen items from the defendant outside, and then he, the defendant, and two officers went back inside the store. The items found on the defendant's person included the fragrances, the gloves, a box cutter, and a handwritten shopping list that matched the exact items stolen. The defendant admitted to Brock and the officers that he had come to the store to steal those specific items so he could sell them for money to support his heroin habit.

Brock testified that he retrieved the empty fragrance boxes found in the store that matched the items found on the defendant. He noted that an empty watch box was found in the store, although he did not personally recover a watch from the defendant. Brock calculated the value of the stolen items, not including the watch, at $1062.49. He said that amount took into account the discounted price of the fragrances that were packaged in gift sets. At the time of the incident, the price of the watch was $29.99. Brock later determined that the value of the items stolen, not taking into account any reductions for items packaged in gift sets, was almost $1200 and that estimate also included the watch. A video recording of the surveillance footage was played for the jury.

On cross-examination, Brock stated that the Jackson Police Department was never asked to assess a value to the stolen property, but he did not think that was pertinent because the value was established by what Kohl's paid for the items. When asked, Brock did not know if the gloves were on sale the day of the incident.

On redirect examination, Brock testified that the stolen items were a total loss to the store because the packages were opened and could no longer be sold, yet Kohl's was still billed by the manufacturer for the items. On recross examination, Brock explained that when an item comes into the store, the price is initially set based on the cost of bringing the item in, i.e., the "base price" or "white ticket price," which he used to determine value. However, he noted that as time passes and seasons change, Kohl's reduces the price of

products not sold, even to the point that some items are eventually sold at a loss. He said that he did not take the sales price of any items into account even though there was the possibility that some of the stolen items might have been located on sales tables.

Jeffrey Smith, Supervisor Specialist at Kohl's Department Store, testified that he was summoned to the loss prevention office on November 21, 2008, because a theft was in progress. On the surveillance video monitor, Smith observed the defendant stealing items, and then he assisted Brock in trying to apprehend the defendant. Smith said that he was trying to direct the responding police officer to the defendant's whereabouts when he received a page to report to the other end of the store where Brock and the defendant were "scuffling." Smith stated that after the police officers handcuffed the defendant, the officers removed the stolen merchandise from the defendant's pants and socks. The officers took the defendant into custody, and a stolen watch was later found on the defendant's arm by the police officers.

Officers Adam Massey and James Avery with the Jackson Police Department responded to the Kohl's Department Store the evening of November 21, 2008. The officers recovered the stolen items concealed on the defendant and took him into custody. When the defendant was booked at the jail, a watch was found on his person and he admitted it belonged to Kohl's.

After the conclusion of the proof, the jury convicted the defendant of theft of property valued between $500-$1000.

## ANALYSIS

On appeal, the defendant challenges the sufficiency of the evidence regarding the value of the goods stolen. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State

v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

To sustain the theft conviction in this case, the State had to prove beyond a reasonable doubt that the defendant, with the intent to deprive the owner of property, knowingly obtained or exercised control over property without the owner's effective consent and that the value of the property was between $500 and $1000. Tenn. Code Ann. §§ 39-14-103, -105(2) (2006).

Here, the defendant does not dispute that he stole the items from Kohl's; he only challenges the value of the goods stolen. Tennessee Code Annotated section 39-11-106 defines "value" as "(i) [t]he fair market value of the property or service at the time and place of the offense; or (ii) [i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense[.]" Id. § 39-11-106(a)(36)(A). If the value of the property cannot be ascertained by the aforementioned criteria, the property is deemed to have a value of less than fifty dollars. Id. § 39-11-106(a)(36)(C). The fair market value of property is a question of fact for the jury. See State v. Hamm, 611 S.W.2d 826, 828-29 (Tenn. 1981). "The market value of the article stolen, and not its original cost, is the true criterion when it is necessary to establish the value of the property in order to fix the grade of the offense[.]" Id. at 829.

The record shows that the jury was properly instructed on how to assess the value of the stolen property – that the value of the stolen property was the fair market value at the time of the offense. Brock testified that he determined the value of the goods by using the "base price" or "white ticket price," which was the cost to Kohl's of bringing the item in to the store. Using this method, Brock determined that the value of the stolen items was

$1092.48, which took into account reductions for items that were packaged in gift sets. He concluded that the value of the stolen items was almost $1200 if he priced the items stolen from gift sets individually without taking into account any discounts for having been packaged in a gift set. Brock did not take into account whether any of the stolen items were on sale in the store the day of the theft. The jury heard Brock's testimony concerning his methodology for ascertaining value and determined that the fair market value was more than $500 but less than $1000. We conclude that the jury had before it sufficient evidence to reach this determination.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE